The United States Court of Appeals for the Ninth Circuit is now in session. Thank you, Ms. Cates. All right, good afternoon. We will take the cases up in the order in which they appear on the docket. The first one, Kwok v. Garland, is submitted, so we will hear U.S. v. Wright. Good afternoon, Your Honor, and may it please the Court. My name is Keith Hilsendecker. I'm an assistant federal public defender in Phoenix, and I represent the defendant in this matter, Aaron Wright. The district court abused its discretion to do either of two things. It abused its discretion to terminate or not terminate Mr. Wright's supervised release because it gave reasons that gave short shrift to Mr. Wright's demonstrated pattern of success on supervision. And even if the court disagrees with that, the district court also abused its discretion to modify his supervised release conditions to make them more onerous in three ways. And I'd like to start, if I may, with the termination request. The district judge's, the hearing judge's primary rationale for not terminating Mr. Wright's term of supervised release was that she felt it was, in her words, extremely premature. But that rationale suffers from one of two flaws. One flaw, as I have pointed out in the brief, is that it could have been, the way that she articulated it, it could have been a reason that applies across the board to any person on supervised release for a sex offense who asks to terminate supervised release at the point in supervision where Mr. Wright did after about five years. The judge said that it's unusual, or it's fairly common in cases like his to present the sort of evidence that he did. And as a result, she said, I don't really give it much weight. If that is the way the court reads the hearing judge's rationale, then that's an abuse of discretion because it's not at all linked to the particular evidence that Mr. Wright presented about his situation. Was that decision made after Ms. Robinson, the probation officer, testified? Yes, it was. So, I mean, Ms. Robinson had concerns about whether or not Mr. Wright was being truthful about his sexual interest. And why wouldn't that be enough to deny the revocation of supervised release? I think that Ms. Robinson's concerns about his, she didn't say untruthful. She used the word deceptive repeatedly. And I'm not sure what she means by that because Mr. Wright was in therapy. He was disclosing the involuntary, unwanted, intrusive sexual fantasies involving children that he was experiencing to the polygrapher. And she was well aware that it's common for people on supervision for child pornography offenses to experience those kinds of unwanted, involuntary, intrusive sexual fantasies involving minors. That was really the only, that was the main area of concern that Ms. Robinson had. And for her I thought the concern was that after the polygraphs ended, he no longer started, he no longer disclosed those fantasies. Well, because under the conditions as they were imposed by the sentencing judge, once therapy was over, the polygraphs were supposed to end too. And that was something that Ms. Robinson admitted about the conditions as they were imposed. Right, but isn't, doesn't that create a clear inference that he's then being deceptive? Where he knew he'd be caught if he was told, if he didn't tell the truth, he told the truth. But when he knew that there was no, there's no way to determine whether or not he's lying, then all of a sudden his things changed. Whether or not he discloses the fact that he has these involuntary, intrusive, unwanted sexual fantasies involving children, things that Ms. Robinson is well aware that he, like many of other, all of her other supervisees experience, I don't see how that's deceptive when it's just sort of an unnecessary thing to belabor. It's sort of a background fact about, you know, their relationship. She's supervising him because she's tasked with supervising sex offenders. All of the sex offenders that she supervises have these particular fantasies. It's not as if he's acting on them. He's not inappropriately touching children. There's no evidence that he's ever done that. Can I ask, I mean, so there's no dispute that he does have these involuntary sexual fantasies involving children, right? No, there's no dispute about that. So why is that not enough reason to deny terminating supervise release? Because they're involuntary. I mean, we don't, we don't. That makes it almost worse. Well, I mean, if that's the reason that we keep these people in supervision for the rest of their lives, a tool that is commonly used in Arizona, you know, the probation officer testified that all of her supervisees were on lifetime supervise release. I question whether that's an appropriate use of government resources to monitor these people who have involuntary, unwanted, intrusive sexual fantasies involving children, simply to make sure that they're, what, not having them? I don't see how that makes it worse, Your Honor. I see that it's something that there's some other aspect of that phenomenon that the government is interested in controlling. And obviously, what it's interested in controlling is that Mr. Wright and people like him don't continue to seek out illicit images of children, and worse, that that behavior doesn't escalate into the actual touching of children in improper ways. Turning quickly to the supervise release conditions, and I would like to save some time for rebuttal if I may. I'd like to focus on the drug. I'm sorry, Your Honor? I just said watch the clock. Okay. I am, and I will. Turning specifically to the drug testing condition, I want to clarify an argument that I made in my open brief, or actually it's in sort of both my briefs. I have contended that the special drug testing condition imposed by the hearing judge amounted to an improper delegation of sentencing authority because it doesn't limit the number of tests involved. The government responded that there are sort of two conditions at play here, the standard condition that's in many of the District of Arizona's general orders, and this special condition. And my response was, well, the special condition is the one that trumps here because it's more specific, and the specific should control over the general. In thinking through the argument, I think an easy way to resolve this is to say that the more specific drug testing condition is the standard condition, which expressly does limit the number of tests. And if this court were to remand to correct that aspect of the order, I think it would be preferable for this court to clarify that the expressly limited number in the standard condition should control over the special condition that the judge imposed. Yes, the special condition says you must submit your substance abuse test, and it doesn't limit it. That's correct. But the condition in the general order, which is incorporated into this, is the standard one drug test within 15 days and up to two a year. And you're not asserting that that violates the law? No, no, I'm not. Just the special condition. Okay. And since I see the yellow light is on, I'll reserve the balance of my time for rebuttal. Okay. Thank you, counsel. Ms. Hernandez? Good afternoon, Rachel. Good afternoon. Rachel Hernandez on behalf of the United States. In considering whether to grant a motion for early termination, the district court is required to consider both the conduct of the defendant and the interest of justice. The district court did exactly that here when it considered the nature of the defendant's pre-polygraphed testimony to the public, given his ongoing objectification of children. The court balanced those factors against the defendant's accomplishments and his community support, and its order was narrowly tailored to meet the defendant's needs. Additionally, the court's decision to impose or reimpose conditions of supervised release was not an abuse of discretion. This court has held that 3583E1, the phrases there are expansive and give the district court broad discretion. I want to turn to a couple of points made by the opposing counsel here on the questions of his involuntary thoughts. To that I want to say, this is the thoughts. It's the fact that he's not disclosing those to his probation officer, and is hiding them and lying about them, and is masturbating. These are actions. It's not his involuntary thoughts that the government is seeking to, or that the probation officer has the concern about. I guess I would liken this to a situation where somebody's schizophrenic and is having involuntary voices in their head. A person who's disclosing that to their probation officer is a much less risk than somebody who's having those thoughts and not disclosing it. Who is he disclosing it to? I mean, we know he had them, but who is he telling them to, if not the probation officer? He's telling them, well, at the time that he was having polygraph examinations, he would disclose those immediately prior to the polygraph, such that that would facilitate passing the polygraph. And once the polygraph term expired, because under the original sentencing order, those were tied only to treatment and not to supervision. And so the district court modified that to apply during supervision as well. Can I ask? I don't want to suggest it necessarily makes a difference here, but the public defender filed the 20HA letter containing data on the average months of supervised release. And is the data correct, or do you dispute the data? I don't dispute the data. I didn't have time to research it. I did file a response to the 20HA. And what I would say in response to it is that the court here did conduct a thorough and narrowly tailored hearing to this defendant's needs. And I would point to a few things to support that. The court said, I don't think that Before we go on to that, we have two cases today. One's from Arizona and one's from Nevada involving lifetime terms of supervised release. And the data is kind of concerning. It seems to be reliable that both those districts seem to have much higher months imposed in terms of supervised release for first-time child pornography offenders. And I'm wondering if you have any explanation for why that would be. I don't, Your Honor, have an explanation for if the situation is that Arizona and Nevada are national outliers. I don't have an answer to that. I would say as to this case, the defendant was given a lesser sentence than he could have been given. And he got the lifetime supervision on the back end. I would also point to the fact that this case was handled by two different judges. One was the sentencing judge and one was a different judge assigned at the time this issue arose. Both of them expressed on the record that the nature of the child pornography here, the amount of child pornography was out of the norm, was extensive, was a concerning factor. They both stated that on the record. So as to this case, why this defendant has lifetime supervision, I believe is supported on the record. Just briefly pointing to a few of the things that the court considered when it denied the motion for early termination was, as I was just discussing, the fact that there was no way for the court to neutrally assess what was happening because there were no polygraph examinations ongoing once he had finished treatment. The court acknowledged that there was an ample record that there was these pre-polygraph disclosures, things that he hadn't told his probation officer. In fact, he told his probation officer he hadn't had a sexual thought about a child since he had been arrested. And that clearly was not accurate. The court also weighed the positive things that the defendant had done. And I have to say, I want to point to the fact that the district court did not grant all of the conditions that the probation officer had asked for. Not that it would have been inappropriate if the court had done that, but if you look at the situation here, the district court said that the defendant could continue to drink alcohol in moderation where the probation officer had asked that he not be allowed to drink any alcohol. The district court said that he could signal approval in the future for him to visit with nieces and nephews once a plan was in place in light of the positive changes that he had made thus far. And so I think if you look at the record as a whole, the district court was saying you've taken some steps, you're not all the way there, there are some concerning things, and the district court said at this point in time, which to me says there is a point in time where this person could get there, but he's not there yet. And I think the record supports that. What will it take to get him there, do you think? Well, I think the troubling behaviors of not being fully disclosive to his probation officer and masturbating to thoughts of children would be a starting point, I would think, for the district court. As I said, I don't think it's the involuntary thoughts, it's the behaviors that go along with those. But again, I mean, the district court, as I said, I think signaled that it would consider it in the future. I don't know, obviously I can't speak for the district court, but from my perspective, it's the behaviors that are troubling that the district court focused on. And so do you have any issue with us clarifying that the maximum number of testings is limited to a year in terms of drug testing? No, not whatsoever, Your Honor. In fact, we stated that in our brief, that we concur that that is the minimum and the maximum of non-treatment drug tests permitted. Thank you. If there's no further questions, we would ask that you affirm. Thank you. Mr. Ilsenberger? I would like to make a short point and a longer point in rebuttal. The short point concerns what the record discloses about Mr. Wright's masturbation habits. Ms. Robinson testified that when he would have these sexual fantasies involving children while he was masturbating, which didn't happen all the time, he would stop. And that is about as much control over the behavior as one would reasonably expect under the circumstances, given that they're involuntary fantasies. My other, my more major point goes to the government's characterization of the hearing judge's consideration of Mr. Wright's positive factors as adequate, because I don't read the record as coming close to being adequate. I mean, it's unusual to see a supervised releasee return to a stable job, have a stable relationship, and be violation-free for five continuous years. Those are incredibly positive factors. And the hearing judge just dismissed them out of hand. This happens all the time. You have, your employer will always come in at times. I think that's really a fair characterization of the hearing judge. I mean, she did hear evidence on both sides, and she was complimentary of Mr. Wright for making some progress, but she felt, and there was evidence to support it, that she didn't have a basis to terminate. So I understand you disagree with the position that she took, but I do think that it's hard to say she didn't give it reasoned consideration given the record we have here. Your Honor, I see that the red light is on, so I just want to quickly say that I stand by the position in the brief and my characterization of the record, and I'll ask the Court to reverse. Thank you very much, Counsel. U.S. v. Wright, admitted.
judges: WARDLAW, BRESS, BUMATAY